# Third District Court of Appeal

## State of Florida

Opinion filed July 12, 2017.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D16-2066
Lower Tribunal No. 16-362
_____

**S.C., a juvenile,**
Appellant,

vs.

**The State of Florida,**
Appellee.

An Appeal from the Circuit Court for Miami-Dade County, Orlando A. Prescott, Judge.

Carlos J. Martinez, Public Defender, and Harvey J. Sepler, Assistant Public Defender, for appellant.

Pamela Jo Bondi, Attorney General, and Kayla H. McNab, Assistant Attorney General, for appellee.

Before LAGOA, SCALES and LUCK, JJ.

LUCK, J.

S.C., after trial, was adjudicated delinquent of possessing a stolen driver's

license, in violation of Florida Statutes section 322.212(1)(a), and ordered to serve

probation.[1]  S.C.'s sole contention on appeal is that the trial court erred in denying his motion for judgment of dismissal because there was no evidence he stole the driver's license.  We affirm.

On February 10, 2016, S.C. ordered an alcoholic drink from bartender Lessy Marcia at the Miccosukee Casino and Resort.  Marcia asked for identification and S.C. presented a driver's license issued to Seth Turner Pallavoda.  Because the picture on the license did not look like S.C., Marcia asked another bartender to take a look, and eventually security was contacted.  Miccosukee Police Officer Florian responded and questioned S.C. about the license.  Initially, S.C. insisted the license was his and that he lost weight.  Still unconvinced, Officer Florian ran a D.A.V.I.D. check to get additional photographs for comparison.[2]  The photographs obtained confirmed that S.C. was not the person pictured on the license.  Officer Florian decided to detain S.C., and as Officer Florian attempted to handcuff S.C., S.C. ran into the resort.  Officer Florian managed to restrain S.C., and a search of S.C.'s pockets revealed other identification in a separate wallet.  Two driver's licenses in the separate wallet were issued to Mario Ruiz.  S.C. claimed he found

---

[1] S.C. was also adjudicated delinquent for resisting a law enforcement officer without violence but that adjudication is not at issue in this appeal.

[2] According to the Florida Department of Motor Vehicles' website, the Driver And Vehicle Information Database, or D.A.V.I.D., is "[a] multifaceted database that affords immediate retrieval of driver and motor vehicle information." http://www.flhsmv.gov/courts/david/ (last visited June 22, 2017).

the Pallavoda license outside a store.  S.C. told the officer the Mario Ruiz licenses belonged to his friend's brother and "[h]e has no idea I took them."

At trial, Mr. Ruiz testified that the licenses bearing his name were his but he didn't know S.C. and never gave him permission to use his licenses.  S.C. presented no evidence but moved for dismissal on the ground that the State presented no evidence the licenses were stolen.  The trial court granted the motion as to the Pallavoda license but denied the motion as to the Ruiz licenses.  The trial court found S.C. guilty of the unauthorized possession of a stolen driver's license.

S.C. contends on appeal, as he did before the trial court, that his motion for judgment of dismissal should have been granted because there was insufficient evidence he stole Mario Ruiz' driver's licenses.  We disagree.

Section 322.212 makes it "unlawful for any person to . . . [k]nowingly have in his or her possession . . . any . . . stolen . . . driver license or identification card." § 322.212(1)(a), Fla. Stat. (2015).  "Stolen" is not defined in chapter 322, which means we give the term its plain and ordinary meaning, resorting to dictionaries where necessary and helpful.  See Martin v. State, 207 So. 3d 310, 317-18 (Fla. 5th DCA 2016) ("Similarly, with respect to the term 'competition,' although the statute does not define this term or provide examples of competition, we may resort to dictionaries to determine the meaning of an undefined statutory term."); State v. Gaulden, 134 So. 3d 981, 982 (Fla. 1st DCA 2012) ("In construing the

plain language of a statute, courts are to give undefined terms their ordinary meanings, consulting a dictionary when necessary."). "Stolen," our dictionaries say, means "[t]o take without right or permission, generally in a surreptitious way." American Heritage Dictionary of the English Language 1261 (Williams Morris ed., 1969); see also Webster's New Collegiate Dictionary 828 (G&C Merriam Co., 1960) ("To take or carry away feloniously").[3]

Here, the evidence supported the trial court's finding that S.C. was in possession of Mario Ruiz' stolen driver's licenses. Specifically, Mr. Ruiz testified that he did not know S.C. and did not give him permission to take the driver's licenses. S.C. confessed that Mr. Ruiz' driver's licenses "belong[ed] to my friend's brother. He ha[d] no idea I took them." S.C., in other words, took the

---

[3] We use older dictionaries from the 1960s because that is when section 322.212 became law, Ch. 65-167, § 1, at 407, Laws of Fla., and the terms of a statute should be given their plain and ordinary meaning as they were understood at the time of enactment. See Leftwich v. Fla. Dep't of Corrs., 148 So. 3d 79, 88 (Fla. 2014) ("[T]his interpretation gives effect to the plain meaning of the statute as written at the time that Leftwich committed his crimes and is consistent with legislative intent at the time the statute was enacted."); Rogers v. Cunningham, 158 So. 430, 432 (Fla. 1934) ("It is not only useless, but not a function of the court, to supply words or omit them from the statute which destroy the generally understood plain meaning of its terms in order to make the statute fit a situation not in the legislative mind at the time the statute was enacted, or type of carrying vehicle not defined by the statute with the nicety of distinction upon which counsel for the state insist."); see also Perrin v. United States, 444 U.S. 37, 42 (1979) ("A fundamental canon of statutory construction is that, unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning. Therefore, we look to the ordinary meaning of the term 'bribery' at the time Congress enacted the statute in 1961." (citation omitted)).

4

driver's licenses without having the permission of the owner, and he did it without the owner having any idea. S.C.'s actions fit snuggly within the definition of possessing "stolen" driver's licenses.

S.C., in response to the confession, makes a My-Cousin-Vinny defense. There are many gems in the 1992 movie <u>My Cousin Vinny</u> – rated by the American Bar Association Journal as the third greatest legal movie of all time[4] – about trial lawyering and procedure, but in one particular scene an arrestee is being asked about shooting a store clerk after inadvertently taking a can of tuna fish. The sheriff asks:

Sheriff:    When'd you shoot him?
Arrestee:   What?
Sheriff:    At what point did you shoot the clerk?
Arrestee:   I shot the clerk?
Sheriff:    Yes. When did you shoot him?
Arrestee:   I shot the clerk?[5]

The sheriff then gets interrupted by a staff member and the interrogation abruptly ends. At the subsequent trial for the murder of the store clerk, the sheriff, recounting the confession, reads the transcript of the arrestee's statement, "I shot the clerk," as a declaration rather than as a question, which changed the meaning.

S.C., in My-Cousin-Vinny fashion, argues that the "he" in his confession can be read another way. S.C. contends the "he" in his statement, "He has no idea

_____

[4] http://www.abajournal.com/gallery/top25movies/89 (last visited June 22, 2017).
[5] http://www.springfieldspringfield.co.uk/movie_script.php?movie=my-cousin-vinny (last visited June 22, 2017).

I took them," was referring to his friend, and not the friend's brother. S.C. claims he stole the driver's licenses from his friend – who may have had authorization or permission to have the driver's licenses – and not from his friend's brother. How one views the "he" makes all the difference, S.C. says, because section 322.212(1)(a) requires the driver's license be stolen from the person to whom it was issued, and not a third party.

S.C. is incorrect for three reasons. First, his reading of the confession is not a reasonable one. The pronoun "he" is immediately preceded by his "friend's brother." S.C.'s "friend's brother" is the subject of the prior sentence to which "he" is referring. Also, in context, S.C. made his statement in response to Officer Florian's question about where he found the Mario Ruiz driver's licenses. The only person S.C. mentioned was his friend's brother. Why, moreover, would S.C.'s friend not know S.C. took the driver's licenses? The person who would not know that S.C. took them would be the friend's brother because they had no relationship. Mr. Ruiz testified he didn't know S.C.

Second, S.C. is incorrect about the confession because to the extent the "he" is subject to two reasonable readings, we review the evidence in the light most favorable to the state. The factfinder, who is viewing the witnesses' demeanor, listening to their inflection and intonation, comparing the testimony with the other evidence and testimony in the case, is entitled to choose one reasonable inference

6

of the evidence over another. See J.H. v. State, No. 3D16-2379, 2017 WL 2348530, at *1 (Fla. 3d DCA May 31, 2017) ("We review the trial court's disposition of the motion for dismissal under the de novo standard, viewing the evidence in the light most favorable to the State. If, upon reviewing the evidence in a light most favorable to the State, a rational fact-finder could find the elements of the crime proven beyond a reasonable doubt, then the evidence is sufficient to sustain the adjudication of delinquency." (quotation omitted)). Making those choices is the essence of the factfinder's role in our justice system, and we do not second guess them on appeal. Here, the trial court's understanding of the confession was a reasonable one that could be used to sustain the adjudication of delinquency.

Third, the other non-confession evidence supports the trial court's finding that S.C. knowingly possessed the driver's licenses that were taken without permission or authorization. (1) S.C. ran when Officer Florian was putting him under arrest for possession of the stolen licenses, which is consciousness of his guilt. See Thomas v. State, 748 So. 2d 970, 982 (Fla. 1999) ("The law is well settled that [w]hen a suspected person in any manner attempts to escape or evade a threatened prosecution by flight, concealment, resistance to lawful arrest, or other indications after the fact of a desire to evade prosecution, such fact is admissible, being relevant to the consciousness of guilt which may be inferred from such

7

circumstance." (quotation omitted)). (2) S.C. had consciousness of guilt, too, because he concealed the Mario Ruiz licenses is a separate wallet. (3) S.C. had on him the identification information of three people – himself, Mario Ruiz, and Seth Turner Pallavoda – and four driver's licenses. (4) Pallavoda and S.C. were so different looking that the bartender called security when she was showed the license. (5) S.C. was trying to use the fake license to buy something he would otherwise not be entitled to buy. These facts, in addition to the confession, support the trial court's finding that S.C. knew the licenses in his possession were taken from their owner without permission or authorization.

For these reasons, we affirm S.C.'s adjudication of delinquency for violating section 322.212(1)(a), and the order of probation.

Affirmed.