# FIRST DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

No. 1D16-2922

_____

BARRY EDWARD ELLIS,

    Appellant,

    v.

STATE OF FLORIDA,

    Appellee.

_____

On appeal from the Circuit Court for Escambia County.
Edward P. Nickinson, III, Judge.

May 3, 2018

JAY, J.

In this direct criminal appeal, Ellis claims that the trial court erred in denying his motion for judgment of acquittal on the charge of aggravated fleeing or attempting to elude "a law enforcement officer in an authorized law enforcement vehicle, with agency insignia and other jurisdictional markings prominently displayed on the vehicle, with siren and lights activated" pursuant to section 316.1935(3), Florida Statutes (2014).  Because the state presented legally sufficient evidence that the agency insignia and other jurisdictional markings were prominently displayed on the law enforcement vehicle in this case, we affirm.

During the midnight shift, Officer Landy of the Pensacola Police Department was flagged down by a convenience store

employee who informed Landy that a man had stolen cigarettes and left in a white car headed west on Bayou Street. Landy headed in that direction and, within seconds, came upon a white car stopped at an intersection with no other traffic on the road. Landy initiated a traffic stop by activating the lights on her patrol vehicle.

At trial, Landy described her patrol vehicle as "a Chevy Tahoe, marked police vehicle, *all the decals*, lights and *everything*." (Emphasis added). Landy confirmed that the vehicle had the words "Pensacola Police Department" on it and that it was "*clearly*" a police vehicle. Officer Spikes arrived at the scene after Landy, and the video from Spikes' body-cam was also admitted into evidence. The video showed "PENSACOLAPOLICE.COM" on the back of Landy's vehicle and "POLICE" along the upper edge of the rear window.

Landy approached the white car and asked the driver, Ellis, for his license, which he provided. However, when Landy asked Ellis to roll down the back-passenger window so that she could speak to the person in the back seat, Ellis snatched his license from Landy's hand and sped away, injuring Landy in the process. Both officers pursued Ellis' vehicle with their police lights and sirens activated. The brief, high-speed chase ended when Ellis turned his vehicle into a dead-end street and abandoned it. Later in the morning, Ellis was taken into custody.

After the state rested, defense counsel moved for a judgment of acquittal on the ground that Officer Landy's testimony was not enough to show that agency insignia were prominently displayed on her vehicle. The trial court denied the motion. Ellis then took the stand. Notably, Ellis testified that before he was approached by Officer Landy, he "was sitting still and the *police car* . . . pulled up behind me." (Emphasis added). After the defense rested, defense counsel renewed the motion for judgment of acquittal, which again was denied by the trial court. The jury returned a verdict finding Ellis guilty as charged.

On appeal, Ellis claims that the trial court erred in denying his motion for judgment of acquittal because the state failed to establish that agency insignia were prominently displayed on Officer Landy's patrol vehicle, citing *Slack v. State*, 30 So. 3d 684 (Fla. 1st DCA 2010). In *Slack*, this court held that a deputy's

2

testimony that he was driving a "marked patrol car" with "lights on top" did not establish that there were "agency insignia and other jurisdictional markings prominently displayed on the vehicle" so as to sustain a conviction for fleeing or attempting to elude a law enforcement officer. *Id.* at 687. In noting that not all markings on law enforcement vehicles constituted agency insignia, the court cited the Third District's decision in *Gorsuch v. State*, 797 So. 2d 649, 651 (Fla. 3d DCA 2001), which held that two officers' unmarked vehicles and a third officer's vehicle marked with a fifteen-inch City of Miami seal did not have the agency insignia required by section 316.1935(3). *Id.*

The facts of this case are distinguishable from those in *Slack*. Even though Officer Landy stated that she was driving a "marked police vehicle," she supplemented this by testifying that the vehicle had the words "Pensacola Police Department" on it, that it had "all the decals" and "lights[,]" and that it was "clearly a police vehicle[.]" This testimony was confirmed by the video from Officer Spikes' body-cam showing "PENSACOLAPOLICE.COM" and "POLICE" conspicuously exhibited on the back of Landy's Tahoe. Viewed in a light most favorable to the state, this evidence established that agency insignia and other jurisdictional markings were prominently displayed on Officer Landy's vehicle. Accordingly, the trial court properly denied Ellis' motion for judgment of acquittal. *See Dupree v. State*, 705 So. 2d 90, 93 (Fla. 4th DCA 1998) (en banc) ("Generally, on a motion for judgment of acquittal, the court should not grant the motion unless, viewed in a light most favorable to the state, the evidence does not establish the prima facie case of guilt.").

To the extent that the dissent equates "agency insignia"—exclusively—with an agency badge or seal, there is no authority requiring such a narrow interpretation of the statutory language. Notably, the word "insignia" is not defined by the statute, "which means we give the term its plain and ordinary meaning, resorting to dictionaries where necessary and helpful." *S.C. v. State*, 224 So. 3d 249, 250 (Fla. 3d DCA 2017). For accuracy, "a comparative weighing of dictionaries is often necessary." Antonin Scalia & Bryan A. Garner, *A Note on the Use of Dictionaries*, 16 Green Bag 2d 419, 422 (2013).

3

The Oxford English Dictionary (Second Edition) defines "insignia" as (1) "badges or distinguishing marks of office or honor"; or (2) "marks or tokens indicative of anything." The Cambridge Dictionary defines "insignia" as "an object or mark which shows that a person belongs to a particular organization or has a particular rank." Webster's New World College Dictionary (Fifth Edition) defines insignia as "badges, emblems, or other distinguishing marks, as of rank, membership, etc." And, the MacMillan Dictionary defines insignia as "a mark on an object that shows who made it, who it belongs to, or what organization it is connected with."

Under any of the above definitions, agency insignia were prominently displayed on Officer Landy's Tahoe insofar as the vehicle was marked to clearly identify it as belonging to the Pensacola Police Department. Specifically, the words "Pensacola Police Department" and "PENSACOLAPOLICE.COM" would qualify as agency insignia. *See Mercury Cab Owners' Ass'n v. Jones*, 79 So. 2d 782, 783 (Fla. 1955) ("Each member cab is painted in distinctive colors (red and yellow) and bears the insignia 'Mercury Cab.'"); *Hudson v. State*, No. 12-03-00035-CR, 2004 WL 1852965, *2 (Tex. App. Aug. 18, 2004) ("The question here is whether the letters D.P.S. on a hat are an insignia identifying the wearer as a peace officer. We conclude that they are."); *Fallin v. State*, 93 S.W. 3d 394, 396 (Tex. App. 2002) ("We find the phrase 'an insignia of a law enforcement agency,' as used in section 37.12, unambiguously refers to *any distinguishing mark* that identifies the item as one originating from an official law enforcement agency.") (emphasis added); *see also Holiday Inns, Inc. v. Holiday Inn*, 645 F.2d 239, 241 (4th Cir. 1981) ("It has also distributed towels, parking lot identification stickers and notices to guests bearing the insignia 'HOLIDAY INN TM.'"); *Fabri-Tek Inc. v. Nat'l Labor Relations Bd.*, 352 F.2d 577, 580 (8th Cir. 1965) ("In addition to the large and vari-vue buttons described heretofore, there were exhibited on company premises during working time other union insignia, including a woman's blouse that was stenciled on the back with the words 'VOTE I.B.E.W.' in very black 2 1/2-inch letters, and earrings fashioned from customary union buttons."); *Hartley v. Suburban Radiologic Consultants, Ltd.*, 295 F.R.D. 357, 364 (D. Minn. 2013) ("Apex prints the letters on preprinted letterhead bearing the insignia 'CT Inc. Services.'"); *Amerisource*

4

*Corp. v. RxUSA Int'l, Inc.,* No. 02–CV–2514 (JMA), 2010 WL 2730748, at *2 (E.D.N.Y. July 6, 2010) ("The Drucker fax header versions also bear an 'rxusal' insignia in the upper left corner, which according to Amerisource's computer forensics expert, indicates that they were printed from a computer on the RxUSA network."); *Allmond v. Bank of Am.*, No. 3:07-cv-186-J-33JRK, 2008 WL 205320, at *4 n.3 (M.D. Fla. Jan. 23, 2008) ("In the upper, left-hand corner, the document bears the insignia 'pps.' . . . . This Court assumes that this is a mark used by Early Warning when it did business as Primary Payment Systems."); *Wood v. United States*, 125 F. Supp. 42, 46 (S.D.N.Y. 1954) ("At 0633 it returned with a capsized lifeboat which was hoisted to the side of the ship and upon inspection was found to bear the insignia 'LT 170'—the designation assigned to The Bucentaur by the British Registry Office."); *People v. Anderson*, 221 Cal. Rptr. 516, 519 (Cal. Ct. App. 1990) ("Valles and Anderson were dressed in blue jumpsuits bearing the insignia 'A.T.F.' on the back and wore what appeared to be police badges on their chests.").

Finally, even assuming that the phrase "agency insignia" only means agency badges or seals—an assumption contrary to the above definitions and caselaw—there was nothing to preclude the state from proving the existence of such insignia by circumstantial evidence. *See State v. Castillo*, 877 So. 2d 690, 693 (Fla. 2004) (observing that it has long been established that circumstantial evidence is competent to establish the elements of a crime); *State v. Surin*, 920 So. 2d 1162, 1164 (Fla. 3d DCA 2006) ("[T]he Florida Supreme Court has long accepted that the State may prove an essential element of an offense through circumstantial evidence . . . , and one Florida court has affirmed a conviction where the age of the victim—an essential element of the crime of child abuse—was proven by circumstantial evidence alone."). Although there was no photographic evidence of an agency seal or badge on Officer Landy's patrol vehicle, Landy's testimony, the body-cam video, and Ellis' testimony constituted circumstantial evidence from which a jury could have concluded—beyond a reasonable doubt—that Landy's vehicle was marked with the type of agency insignia commonly found on law enforcement vehicles. Accordingly, we affirm.

AFFIRMED.

5

ROBERTS, J., concurs; MAKAR, J., dissents with opinion.

_____

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

_____

MAKAR, J., dissenting.

Florida law penalizes those who willfully flee or attempt to elude a " law enforcement officer in an authorized law enforcement patrol vehicle, with agency insignia and other jurisdictional markings prominently displayed on the vehicle, with siren and lights activated," and more so if the eluder drives at a high speed or with wanton disregard for the safety of others. § 316.1935(2) & (3), Fla. Stat. (2017) (third degree felony for the former, second degree for the latter). Whether sufficient evidence was presented that the vehicle used by law enforcement officers in their pursuit of Barry Edward Ellis had "agency insignia and other jurisdictional markings prominently displayed on the vehicle" is the question posed.

A convenience store employee waved down and told Officer Maria Landy, a twenty-year veteran of the Pensacola Police Department working the midnight shift, that a male had stolen cigarettes and left in a white car headed west on Bayou Boulevard. Officer Landy headed in that direction and within seconds came upon a red light at 9th Avenue, where a "little white car" was stopped—it being the only vehicle in sight at that late hour.[1] Ellis

---

[1] Affirmance of the trial court's denial of Ellis's motion to suppress is proper, a minimally sufficient basis for the initial investigatory stop existed based upon these and other related facts. Moreover, any causal link of illegality from the stop was broken when Ellis fled and injured Officer Landy. *See United States v. Bailey*, 691 F.2d 1009, 1013 (11th Cir. 1982) (finding flight from police that amounts to a new, distinct crime purges

was driving and a second occupant could be seen in the front passenger seat. A second police officer arrived almost immediately, informing Officer Landy that a third occupant—who was difficult to see—was in the back seat. Ellis had turned the car off at Officer Landy's direction, but cranked it back up when she asked him to lower the back-seat windows. Ellis then sped away, injuring Officer Landy in the process. Both officers took pursuit with their police lights flashing and sirens on. The chase—though brief—was over the speed limit and resulted in Ellis's vehicle turning into a dead-end street and being abandoned. Ellis was taken into custody soon thereafter.

At trial, after the close of the State's case, Ellis moved for a judgment of acquittal on the basis that the State failed to present sufficient evidence that Officer Landy's vehicle had "agency insignia and other jurisdictional markings prominently displayed" on it. His motion was denied, and denied again at the conclusion of the case. Ellis was convicted of a second-degree felony under section 316.1935(3)(a), Florida Statutes. Ellis appeals, again claiming the lack of evidence of "agency insignia" on the police vehicle requires reversal of his conviction under subsection (3)(a) (though, as mentioned below, on remand he would be re-sentenced to a violation under subsection (1)).

Analysis begins, and ultimately ends, with the statutory language the Florida Legislature has used to define criminality for fleeing or attempting to elude law enforcement officers. Violations and penalties are based on specific statutorily-defined scenarios. Penalties are severe, ranging from third to second degree felonies, plus mandatory revocation of drivers' licenses and forfeiture of motor vehicles, if involved in the flight. § 316.1935(1)-(7), Fla. Stat. (entitled "Fleeing or attempting to elude a law enforcement officer; aggravated fleeing or eluding.").

---

initial police illegality); *see also Tims v. State*, 204 So. 3d 536 (Fla. 1st DCA 2016) (finding that "fruit of the poisonous tree" doctrine does not "immunize a defendant from arrest for new crimes" committed during illegal searches, else a defendant would have "an intolerable carte blanche to commit further criminal acts") (quoting *Bailey*, 691 F.2d at 1017).

The basic fleeing/eluding charge in subsection (1) of the statute does *not* require that the officer be in a law enforcement vehicle or that pursuit by such vehicle occur. Instead, it makes it unlawful "for the operator of any vehicle, having knowledge that he or she has been ordered to stop such vehicle by a duly authorized law enforcement officer, willfully to refuse or fail to stop the vehicle in compliance with such order" or "having stopped in knowing compliance with such order, willfully to flee in an attempt to elude the officer[.]" § 316.1935(1), Fla. Stat.

In contrast, subsections (2) and (3) limit themselves to fleeing/eluding law enforcement officers who are physically inside a specifically-defined subset of police vehicles. Under subsection (2), it is unlawful for a person to flee or attempt to elude a law enforcement officer while that officer is "in an authorized law enforcement patrol vehicle, with agency insignia and other jurisdictional markings prominently displayed on the vehicle, with siren and lights activated," which is a third degree felony. *Id.* § 316.1935(2). Similarly, subsection (3)(a)—under which Ellis was charged—makes it unlawful to engage in the criminal conduct defined in subsection (2), if the person "[d]rives at high speed, or in any manner which demonstrates a wanton disregard for the safety of persons or property[.]" *Id.* § 316.1935(3)(a). Such conduct is punishable as a second degree felony. A person who knowingly flees a police officer violates subsection (1), but not subsections (2) or (3), which require proof that the officer is in the statutorily-defined law enforcement vehicle.

In this subsection (3) case, no doubt exists that Officer Landy was in a law enforcement patrol vehicle, that Ellis fled at high speed and dangerously from her lawful authority, and that the pursuit thereafter involved "siren and lights activated" on the officer's vehicle. She testified that she was in a "marked police vehicle" with "all the decals, lights and everything" but she did not describe what the decals were, what they said, where they were located, or their size. She confirmed that the words "Pensacola Police Department" were on the vehicle, but did not say where, how large the letters were, or whether the words were part of or considered the Department's agency insignia. No picture of the vehicle was put into evidence. Though not relied upon by the State

8

on appeal, body-cam video—shown to the jury—fleetingly shows that decals of "PENSACOLAPOLICE.COM" and "POLICE" were displayed on the rear of Officer Landy's vehicle and along the rear window's upper edge, respectively. At best, these general references fall within the common understanding of "jurisdictional markings," which define an agency's geographic domain, such as "Pensacola Police Department."

No effort was made below or on appeal to establish that either of these letter decals was an "agency insignia," a phrase not defined by statute, but best understood contextually as an official governmental symbol of criminal justice authority—typically a shield or badge-like emblem—that only authorized law enforcement officers may use. The popularity of police insignias is reflected in a vibrant and long-established marketplace where collectors buy/sell patches and badges nationally and internationally. It has fostered the establishment of innumerable police insignia collectors' associations.[2] "Insignia" alone—as reflected by its many and assorted dictionary definitions[3]—is a

---

[2] One example is the Police Insignia Collectors Association of Great Britain, which has an American following and a page devoted to United States police insignias, which are unvaryingly shields and badges. *See* http://www.pica.co.uk/america_page.html (last visited April 2, 2018). Numerous U.S.-based associations also exist, though focused more generally on police memorabilia including badges, emblems and other police insignia.

[3] *United States v. Costello*, 666 F.3d 1040, 1043-44 (7th Cir. 2012) ("[D]ictionaries must be used as sources of statutory meaning only with great caution. . . . Dictionary definitions are acontextual, whereas the meaning of sentences depends critically on context, including all sorts of background understandings."); *see also* Frank H. Easterbrook, *Text, History, and Structure in Statutory Interpretation*, 17 HARV. J.L. & PUBLIC POLICY 61, 67 (1994) ("In interesting cases, meaning is not 'plain'; it must be imputed; and the choice among meanings must have a footing more solid that a dictionary—which is a museum of words, an historical catalog rather than a means to decode the work of legislatures.").

much broader concept and different from "agency insignia," which has a narrower and commonly-understood meaning in the context of law enforcement patrol vehicles: badges and shields reflecting official police authority.

An "agency insignia" is distinct from, but often accompanies and complements, the requisite "jurisdictional markings." Here's a common example of both an "agency insignia" (the official badge-like emblem) and jurisdictional markings ("Sheriff Manatee County") on a law enforcement patrol vehicle:



This contrasts with what we have in this case, which is, at best, only the "jurisdictional markings" of the Pensacola Police Department without an official agency insignia:



The statutory requirement of a prominently displayed agency insignia provides greater assurance to the general public that persons operating such vehicles are real police officers with the authority to make official stops, thereby increasing the punishment against those who willfully flee; it also dovetails with the laws punishing those who impersonate police officers and vehicles to facilitate crimes. *See also* §§ 843.08-.085, Fla. Stat. (making unlawful impersonation of officers, use of blue lights, and use of badges and other indicia of authority). Agency insignia and jurisdictional markings are separate and distinct statutory requirements; both must be proven to establish that Ellis violated subsection (3).

On this point, Florida appellate courts have taken a generally unified approach as to whether evidence is legally sufficient to support a guilty verdict under subsections (2) or (3), both of which utilize the "agency insignia" language. Excepting one Fourth District case, every district court decision has taken a strict approach, holding the State to its evidentiary burden of proving that an officer's vehicle has "agency insignia and other jurisdictional markings prominently displayed." The exception, discussed below, takes a different and insupportable approach, concluding that an offender may violate subsection (2) when an offender knowingly flees a law enforcement vehicle, even if proof of all the requisite markings is lacking.

As to the majority approach, in *Gorsuch v. State*, 797 So. 2d 649 (Fla. 3d DCA 2001), the Third District held that a vehicle marked with a fifteen-inch "City of Miami seal" on the door was insufficient to satisfy the statutory language that the pursuing officer was in "an authorized law enforcement *patrol vehicle* with *agency insignia* and other jurisdictional markings[.]" *Id.* at 650. The defendant fled recklessly from officers, all of whom were wearing t-shirts with police insignia at the time of the initial stop arising from narcotics surveillance. Two officers in the pursuit drove unmarked vehicles and the third had the vehicle with the city seal. Because there "was no evidence . . . that any of the vehicles had an insignia as required by subsection 316.1935(3)," and no demonstration that sirens had been operated during the

11

flight, the conviction under subsection (3)(a) was reversed and corrected to a violation of subsection (1).

This Court followed *Gorsuch*'s reasoning in *Slack v. State*, 30 So. 3d 684 (Fla. 1st DCA 2010), which held that the State had failed to present evidence of prominently displayed agency insignia and jurisdictional markings. The officer in *Slack* "testified he was driving a 'marked patrol car, lights on top,' and was wearing a uniform at the time. He testified that, to make the [suspect vehicle] stop, he 'engaged' his exterior lights and activated his siren." *Id.* at 686. This testimony was not enough.

> While [the officer] testified he was driving a "marked patrol car" with "lights on top" and that he activated his lights and siren, there was no evidence of "agency insignia and other jurisdictional markings prominently displayed on the vehicle." . . . That not all markings on law enforcement vehicles constitute agency insignia was made clear in *Gorsuch.* By neglecting to adduce any evidence that [the officer's] vehicle had agency insignia or other jurisdictional markings, the state failed to make out a prima facie case of fleeing or attempting to elude a law enforcement officer . . . and the trial court erred in denying Mr. Slack's motion for judgment of acquittal.

*Id.* at 687. This Court noted that the trial judge in *Slack* (like the trial judge here) denied the motion for judgment of acquittal based, in part, by presuming that the vehicle had to be marked in a particular way. *Id.* ("[T]he trial judge denied the motion for judgment of acquittal, reasoning: 'He did refer it was a marked patrol vehicle, and he did identify himself as a member of the sheriff's department. *I know by Florida law their patrol vehicles must be marked in a certain scheme as required by Florida law*.'") (emphasis added). Neither the evidence presented nor the trial court's presumption as to the vehicle's markings, however, was deemed sufficient to satisfy the statutory requirement of a prominently displayed agency insignia and markings.

Similarly, in *Jackson v. State*, 818 So. 2d 539 (Fla. 2d DCA 2002), the Second District held that the lack of evidence that a

12

police vehicle's markings were "prominently displayed" justifies vacating a conviction under subsection (2).

> Here, the State presented [the officer's] testimony that his overhead lights and siren were activated, but there was no testimony that his vehicle was otherwise marked. The deputy [who observed the officer's patrol car] recounted that he observed the Lake Alfred patrol car. But he did not say that he recognized it as such because of its markings, or even that it was marked, or that he even knew the car was from the Lake Alfred Police Department before he stopped to assist. In the absence of proof that the car was prominently marked, the evidence was insufficient to support a conviction for felony fleeing under section 316.1935(2).

*Id.* at 542. Of note, the mere fact that *another* officer observed the patrol car was insufficient to create an inference that it was appropriately marked as required under sections 316.1935(2)-(3). *See also Hanson v. State*, 92 So. 3d 288 (Fla. 5th DCA 2012) (finding evidence was legally insufficient to establish the requisite "prominently displayed" agency insignia or markings); *Erskine v. State*, 23 So. 3d 1207, 1209 (Fla. 3d DCA 2009) (finding "no evidence that the police car involved in the chase in question had agency insignia and other jurisdictional markings prominently displayed").

Our decision in *Slack* mirrors the situation here. Officer Landy's testimony established only that her vehicle was "marked" with "decals" and the words "Police" and "Pensacola Police Department." But *Slack* held that generic statements ("marked" and "decals") fall short of what is legally-sufficient, and *Gorsuch*, adopted by *Slack*, held that general jurisdictional markings such as "City of Miami" are likewise insufficient. *Slack* specifically warned that evidence of generalized markings on police vehicles generally do not meet the statutory requirements because "not all markings on law enforcement vehicles constitute agency insignia" as the law requires. 30 So. 3d at 687. For the same reason, that Officer Landy said it was "clearly a police vehicle" does not mean it had the "agency insignia and other jurisdictional markings prominently displayed," as required. Agency insignia and

13

jurisdictional markings are separate and independent requirements under the statute (and the jury instructions). Nothing in the evidentiary record presented to the jury, however, provides a basis to conclude that an *agency insignia* existed—let alone that it was prominently displayed.

Like that faced by the trial judges here and in *Slack*, there is a judicial temptation to presume that Officer Landy's vehicle must have had an agency insignia and that it was "prominently displayed" on her vehicle. But patrol vehicles may have jurisdictional markings (like the "City of Miami" seal in *Gorsuch*) without the requisite agency insignia. The judicial role, as defined in *Slack* and related cases, and as applied here, requires that this evidentiary gap not be filled with an assumption or inference— particularly when the assumption or inference may be incorrect and the statutory requirement can be easily proven with a photo of the agency insignia on the vehicle or via answers to questions about the description, size, and placement of the agency insignia and markings.

In its appellate brief, the State sidesteps the agency insignia issue, saying the most important fact is that Ellis knew he was fleeing a police car, which is insufficient under *Slack* and related precedents to support a conviction under subsections (2) or (3). In effect, the State's position is aligned with a Fourth District case,[4] *Dumais v. State*, 40 So. 3d 850 (Fla. 4th DCA 2010), which addressed whether testimony from an officer that his police vehicle was "marked," combined with the defendant knowing he was fleeing a police officer, was sufficient to sustain a conviction under subsection (2).

> Viewing the officers' references to "marked unit" and "marked police vehicle" in the light most favorable to the state, in conjunction with the defendant's admission that

---

[4] In another case, the court reversed a conviction, without discussion, based on inadequate evidence of the required markings. *Sanner v. State*, 63 So. 3d 934 (Fla. 4th DCA 2011) ("We agree that the state failed to put on proof of this statutory element, requiring reversal.").

14

he knew he was fleeing from the police, we conclude that competent, substantial evidence supports the defendant's conviction for aggravated fleeing and eluding.

The defendant relies upon three cases in which our sister courts reversed convictions for aggravated fleeing and eluding because the state did not prove the "agency insignia and other jurisdictional markings" element: *Gorsuch v. State*, 797 So. 2d 649, 651 (Fla. 3d DCA 2001); *Jackson v. State*, 818 So. 2d 539, 542 (Fla. 2d DCA 2002); and *Slack v. State*, 30 So. 3d 684, 687 (Fla. 1st DCA 2010). However, none of those cases involved a defendant admitting that he knew he was fleeing from the police, as occurred here. We find that fact significant. *The purpose* of requiring the state to prove that "the law enforcement officer was in an authorized law enforcement patrol vehicle with agency insignia and other jurisdictional markings prominently displayed on the vehicle and with siren and lights activated" *is to guarantee that the defendant "[knew] he had been directed to stop by a duly authorized law enforcement officer [and] willfully refused or failed to stop."* Fla. Std. Jury Instr. (Crim.) 28.7 (2007). The defendant's admission here provides that guarantee. We leave for another day our consideration of whether reference to a "marked" vehicle, standing alone, is sufficient to prove the "agency insignia and other jurisdictional markings" element.

*Id.* at 852-53 (Fla. 4th DCA 2010) (emphasis added). A concurring opinion, which rejected the approach taken in *Gorsuch*, *Jackson*, and *Slack*, found that the officer's testimony satisfied the statute.[5]

---

[5] *Dumais*, 40 So. 3d at 853 (Stevenson, J., concurring in result) ("I would find that the testimony of [the officer] that (1) the attempted stop occurred in Fort Lauderdale, (2) while he was on duty as a police officer with the City of Fort Lauderdale Police Department, (3) in uniform, (4) on road patrol assignment, and (5) driving a 'marked unit,' was more than enough to satisfy the statute's requirement that the vehicle was 'an authorized law enforcement patrol vehicle, with agency insignia and other jurisdictional markings prominently displayed.'").

The italicized language from *Dumais* says that a fleeing offender's admission that he was pursued by law enforcement officers negates the need to fulfill the statutory requirement of "prominently displayed" agency insignia and markings. But that is insufficient under the language of the statute and all other caselaw. Such an admission is enough to meet the requirements of subsection (1), which penalizes willfully-fleeing offenders who know they have "been ordered to stop such vehicle by a duly authorized law enforcement officer," yet flee anyway. § 316.1935(1), Fla. Stat. But the Legislature created a different type of crime in subsections (2) and (3), which add the requirement that willful flight be from an "authorized law enforcement patrol vehicle, with agency insignia and other jurisdictional markings prominently displayed on the vehicle, with siren and lights activated[.]" *Id.* §§ 316.1935(2) & (3). Offenders flee police officers in many different ways, only one of which involves the distinguishing element of these subsections: flight from a law enforcement vehicle "with agency insignia and other jurisdictional markings prominently displayed" on it. This language must be viewed, as do the standard jury instructions,[6] as requiring

---

[6] *See* Fla. Std. Jury Instr. (Crim.) 28.8 (Fleeing To Elude A Law Enforcement Officer; Siren and Lights Activated with High Speed or Reckless Driving):

To prove the crime of Fleeing to Elude a Law Enforcement Officer, the State must prove the following *four elements* beyond a reasonable doubt:

1. (Defendant) was operating a vehicle upon a street or highway in Florida.

2. (Defendant), knowing [he] [she] had been directed to stop by a duly authorized law enforcement officer, willfully fled in a vehicle in an attempt to elude a law enforcement officer.

3. The law enforcement officer was in an authorized law enforcement patrol vehicle *with agency insignia and*

16

adequate proof of "prominently displayed" agency insignia and markings as an independent element of the offense. That an offender knew he was fleeing a law enforcement officer does not satisfy this element; nor does evidence that a vehicle was marked, absent additional evidence that the requisite agency insignia and jurisdictional markings were prominently displayed. Ellis's testimony that he knew Officer Landy was a legitimate police officer, and that his flight from her vehicle was willful, is no substitute for agency insignia and jurisdictional markings in accordance with the statute.[7] Affirming Ellis's conviction under subsection (3) is consistent with the Fourth District's decision (and concurrence) in *Dumais*, but it is contrary to our precedent in *Slack*.

The State failed to meet its evidentiary burden to show that Officer Landy's patrol vehicle had "prominently displayed" "agency insignia" as required by the statute, such that reversal and a remand for entry of judgment for the lesser-included offense under subsection (1) is proper. *Slack*, 30 So. 3d at 688.

––––––––––––––––––––––––––––

––––––––––––––––––

> *other jurisdictional markings prominently displayed* on the vehicle and with siren and lights activated.
>
> 4. During the course of the fleeing or the attempt to elude, (defendant) drove at high speed or in any manner demonstrating a wanton disregard for the safety of persons or property.

(Emphasis added).

[7] *Williams v. State*, 24 A.3d 210, 234 (Md. Ct. Spec. App. 2011) ("To the extent the State contends that the testimony of defense witness, Sullivan, confirmed the State's point that appellant knew he was being pursued by a police vehicle, this is of no significance, as we, like other Courts, observe that the State bears the burden to prove all elements of an offense beyond a reasonable doubt.") (surveying the law of seven states, including Florida, on the issue of markings on police vehicles).

Andy Thomas, Public Defender, Danielle Jorden, Assistant Public Defender, Tallahassee, for Appellant.

Pamela Jo Bondi, Attorney General, Sharon S. Traxler, Assistant Attorney General, Tallahassee, for Appellee.